# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JESUS ENRIQUE SANCHEZ VAZQUEZ,<br><br>Defendant. | CASE NO. 18cr3560-LAB<br><br>**ORDER GRANTING MOTION TO EXTEND THE TIME TO APPEAL [Dkt. 56]** |
|---|---|

A panel of the Ninth Circuit has remanded this case for the limited purpose of having this Court determine whether Defendant Jesus Sanchez Vazquez's delay in filing his notice of appeal should be excused as the result of "excusable neglect or good cause." Fed. R. App. Proc. 4(b)(4). Under the liberal standards that apply to this question, the answer is yes. *See Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (applying the four-factor test set out in *Pioneer v. Brunswick*, 507 U.S. 380 (1993)). Defendant speaks only limited English and alleges that he had to rely on other inmates to prepare his notice of appeal. At the time he filed his appeal, he also lacked access to both his case files and Spanish-language legal resources, like the Federal Rules of Appellate Procedure. Despite these barriers, he managed to file a notice of appeal just four days late, which can hardly be considered prejudicial delay. Given the circumstances, the Court finds "excusable neglect" and **GRANTS** Defendant's motion to extend the time to appeal under Rule 4(b)(4).

But the Court is concerned that permitting an appeal here is nonetheless bad policy. The plea agreement in this case states that "Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence." Dkt. 24 at 11. The agreement was signed by the Defendant after consultation with his counsel, and the Defendant specifically acknowledged the waiver of appeal provision during both his plea colloquy and sentencing. *See* Dkt. 46 at 7:15-24; Dkt. 47 at 30:10-15. The appellate waiver contains only two exceptions: "(i) defendant may appeal a custodial sentence above the greater of 71 months or the statutory mandatory minimum term, if applicable; and (ii) defendant may collaterally attack the conviction or sentence on the basis that defendant received ineffective assistance of counsel." Dkt. 24 at 11. The first exception isn't implicated because the Court imposed a 71-month custodial sentence, just as the plea agreement called for. The second exception relates only to collateral attack, not direct appeals, and isn't relevant here.

Defendant therefore got exactly what he bargained for: a sentence of less than 71 months in custody. What did the government get for its bargain? If Defendant is allowed to appeal his sentence, the answer is not much.

"Plea bargains are an important—indeed an essential—component of our criminal justice system; they provide vast benefits to the government, to our courts, to the public and to criminal defendants." *United States v. Gonzalez,* 981 F.2d 1037, 1040 (9th Cir.1992) (Kozinski, J., dissenting). In reaching a plea bargain, the government receives two distinct but related benefits. First, it is relieved of its obligation to take the case to trial. This benefit accrues not just to the government, but also to the courts, which are now free to devote their limited resources to other cases. More importantly, though, the government also receives the promise of finality—that if the judge accepts and follows the plea agreement, the charge will stick and the defendant's conviction will be final. It is this latter benefit, finality, that is "perhaps the most important benefit of plea bargaining." *United States v. Navarro–Botello,* 912 F.2d 318, 322 (9th Cir.1990).

By permitting an appeal here—by implicitly sanctioning the defendant's breach of the plea agreement—the government is deprived of finality. *See Gonzalez*, 981 F.2d at 1040 (Kozinski, J., dissenting) ("A defendant breaches the contract when he nevertheless files a notice of appeal after agreeing not to do so, thereby denying the government, the public and the courts the benefit of the plea agreement.") Even if it ultimately prevails, the government will expend its limited resources on defending an appeal that should never have been brought. It will be forced to address *both* the waiver issue and the merits, and the case will likely drag out for a year or more. "It is precisely to avoid the expenditure of these resources that the government includes no-appeal clauses in many plea bargains." *Id.*

Defendant now argues, based on the Supreme Court's recent decision in *Rehaif v. United States*, \_\_ U.S. \_\_, 139 S. Ct. 2191 (2019), that his plea colloquy was defective and that his appellate waiver therefore doesn't apply. *See United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) ("An appeal waiver will not apply if . . . a defendant's guilty plea failed to comply with Fed. R. Crim. P. 11."). But the Ninth Circuit has consistently rejected this argument, *see United States v. Jefferson*, 791 F.3d 1013, 1019 (9th Cir. 2015); *United States v. Carranza,* 289 F.3d 634, 644 (9th Cir. 2002); *United States v. Ramirez–Ramirez,* 875 F.2d 772, 774 (9th Cir. 1989); *United States v. Rea,* 532 F.2d 147, 149 (9th Cir. 1976), and there is little reason to think *Rehaif* has altered the calculus. After all, in *Jefferson*, the defendant made an argument like the one Defendant now advances: that the Supreme Court's decisions in *Alleyne v. United States*, 570 U.S. 99 (2013) and *Flores–Figueroa v. United States*, 556 U.S. 646 (2009) abrogated this Ninth Circuit precedent and required that a *mens rea* be read into all portions of the drug importation statute. The Ninth Circuit rejected this argument, finding that unlike the statutes at issue in *Alleyne* and *Flores-Figueroa*, the drug importation statute was not at risk of penalizing "innocent conduct" in the absence of a *mens rea* on all elements. *Jefferson*, 791 F.3d at 1018. "If the government must prove that the defendant knew he was importing some amount of a controlled substance, that is sufficient to ensure the statute penalizes only culpable conduct." *Id.* So it is here.

      The Court is not attempting to wade into the merits of Defendant's appeal, or to argue that defendants who enter plea agreements never have a valid reason to appeal. Crafty defendants can always come up with some reason why *their* appellate waiver doesn't apply. But that's just the point: the exception now swallows the rule. A defendant seeking to avoid the plain language of his appellate waiver need only recite the magic words—"defective plea colloquy," "ineffective assistance of counsel," "illegal sentence"—to render the language meaningless. The Court struggles to condone appeals like this one that are plainly an attempt by a defendant to have his cake and eat it too.

      The Court finds "excusable neglect" to extend Defendant's appellate deadline, (Fed. R. App. Proc. 4(b)(4)), but it does so unenthusiastically.

**IT IS SO ORDERED**.

Dated: April 27, 2020

*[signature]*

**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge